1
2
3
4
5
6
7
8                           IN THE UNITED STATES DISTRICT COURT

9                         FOR THE EASTERN DISTRICT OF CALIFORNIA

10   BILLY VAUGHAN,

11              Petitioner,                    No. CIV S-04-2549 JAM DAD P

12       vs.

13   TERESA SCHWARTZ,

14              Respondent.              FINDINGS & RECOMMENDATIONS

15   _____/

16              Petitioner is a state prisoner proceeding pro se with an application for a writ of

17   habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges a judgment of conviction

18   entered against him on August 24, 2001 in the Sacramento County Superior Court following his

19   trial and conviction on charges of possession of more than 28.5 grams of marijuana,

20   transportation of marijuana and driving without a valid license.  He seeks relief on the grounds

21   that: (1) jury instruction error violated his right to due process; (2) his trial and appellate counsel

22   rendered ineffective assistance; and (3) his right to due process was violated at his sentencing

23   hearing.  Upon careful consideration of the record and the applicable law, the undersigned will

24   recommend that petitioner's application for habeas corpus relief be denied.

25   /////

26   /////

1

PROCEDURAL AND FACTUAL BACKGROUND[1]

An amended information charged defendant Billy Shelton Vaughan and codefendant Henry Vaughan with possession of marijuana for sale (Health & Saf.Code, § 11359; count one) and transportation of marijuana (Health & Saf.Code, § 11360, subd. (a); count two). Defendant was also charged with driving without a valid license, a misdemeanor (Veh.Code, § 12500, subd. (a); count three).  It was further alleged that defendant had a strike prior (1979 robbery) (Pen.Code, §§ 667, subds.(b)-(i), 1170.12) and that codefendant Henry Vaughan had served five prior prison terms (§ 667.5, subd. (b)).

A jury acquitted defendant on count one but convicted him of the lesser included offense of possession of more than 28.5 grams of marijuana (Health & Saf.Code, § 11357, subd. (c)).  The jury also convicted defendant on counts two and three.  In bifurcated proceedings, the court found the strike prior to be true.

Sentenced to state prison, defendant appeals, contending the trial court committed instructional error.[2]  We will affirm.

FACTS

About 6:30 p.m. on March 4, 2001, Sacramento Police Officer Douglas Tracy pulled over a red Escort for speeding.  As the officer approached the car, he smelled marijuana.  Defendant was the driver and unable to produce a driver's license.  Henry Vaughan was sitting in the passenger's seat.  As Henry looked in the glove box, apparently for the registration and evidence of insurance, the officer shined his flashlight into the glove box for reasons of officer safety.  On the passenger floorboard between Henry's feet and not under the seat, Officer Tracy saw a baggie containing 281 grams of marijuana in brick form.  Defendant and Henry were ordered from the car.  A search of the car revealed a scale in the baggie with the marijuana brick and 5.63 grams of marijuana in a baggie stuck between the driver's seat and the center console.  An officer found 1.99 grams of marijuana, $2,399 and a pager on Henry's person.  No marijuana cigarette butts or rolling papers were found.  An expert opined that the marijuana was possessed

---

[1]  The following summary is drawn from the April 15, 2003 opinion by the California Court of Appeal for the Third Appellate District (hereinafter Opinion), designated as Respondent's Lodged Document No. 2, at pgs 1-4.  This court presumes that the state court's findings of fact are correct unless petitioner rebuts that presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1); Davis v. Woodford, 384 F.3d 628, 638 (9th Cir. 2004). Petitioner has not attempted to overcome the presumption with respect to the underlying events. The court will therefore rely on the state court's recitation of the facts.

[2]  Codefendant Henry Vaughan's appeal is pending in case No. C040488.

for sale.  Based on two or three marijuana cigarettes per gram, the 281-gram brick would produce between 561 and 837 marijuana cigarettes; a chronic user uses five to six a day.  A subsequent search of the residence defendant and Henry shared with others revealed no other evidence.

Defendant testified.  He and Henry are step-brothers.  Defendant claimed he used marijuana occasionally but that Henry used marijuana all the time; he had never seen Henry sell it.  At the time of the stop, defendant was driving Henry's car but did not have a valid driver's license.  They had started to help a friend move and then ran errands.  Afterward, Henry asked defendant to drive his car.  Defendant claimed he had difficulty seeing out of his right eye at the time but had surgery after his arrest to remove a cataract.  While driving Henry's car, defendant knew that Henry was rolling a marijuana cigarette because Henry said he was and defendant could hear it but did not see it.  Defendant later said he saw Henry smoking a marijuana cigarette.  Defendant denied seeing the marijuana brick on the floorboard or any other marijuana.  The automatic shift on Henry's car was on the console between the seats.  Defendant denied speeding.  He admitted having previously been convicted of robbery in 1979 and possession of counterfeit money in 1998.

Henry also testified.  He claimed that the marijuana brick, the baggie with marijuana found between the seat and console and the baggie in his pocket all belonged to him, not defendant. Henry explained that the marijuana was intended for his personal use, not to sell, and that it was cheaper to purchase in a large quantity. After the death of his father, Henry increased his marijuana use from four to five marijuana cigarettes a day to as many as 15 a day.

Dr. Joseph Martel, an ophthalmologist, examined defendant on May 23, 2001, and performed surgery on him on May 31, 2001, to remove a mature (at least a year old) cataract on his right eye which made defendant's vision "considerably worse" than the standard of legal blindness.

ANALYSIS

I.  <u>Standards of Review Applicable to Habeas Corpus Claims</u>

A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of some transgression of federal law binding on the state courts.  <u>See</u> <u>Peltier v. Wright</u>, 15 F.3d 860, 861 (9th Cir. 1993); <u>Middleton v. Cupp</u>, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing <u>Engle v. Isaac</u>, 456 U.S. 107, 119 (1982)).  A federal writ is not available for alleged error in the interpretation or application of state law.  <u>See</u> <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991);

1  Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000); Middleton, 768 F.2d at 1085.  Habeas

2  corpus cannot be utilized to try state issues de novo.  Milton v. Wainwright, 407 U.S. 371, 377

3  (1972).

4          This action is governed by the Antiterrorism and Effective Death Penalty Act of

5  1996 ("AEDPA").  See Lindh v. Murphy, 521 U.S. 320, 336 (1997); Clark v. Murphy, 331 F.3d

6  1062, 1067 (9th Cir. 2003).  Section 2254(d) sets forth the following standards for granting

7  habeas corpus relief:

8              An application for a writ of habeas corpus on behalf of a
               person in custody pursuant to the judgment of a State court shall
9              not be granted with respect to any claim that was adjudicated on
               the merits in State court proceedings unless the adjudication of the
10             claim -

11             (1) resulted in a decision that was contrary to, or involved
               an unreasonable application of, clearly established Federal law, as
12             determined by the Supreme Court of the United States; or

13             (2) resulted in a decision that was based on an unreasonable
               determination of the facts in light of the evidence presented in the
14             State court proceeding.

15  See also Penry v. Johnson, 532 U.S. 782, 792-93 (2001); Williams v. Taylor, 529 U.S. 362

16  (2000); Lockhart v. Terhune, 250 F.3d 1223, 1229 (9th Cir. 2001).

17          The court looks to the last reasoned state court decision as the basis for the state

18  court judgment.  Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).  Where the state

19  court reaches a decision on the merits but provides no reasoning to support its conclusion, a

20  federal habeas court independently reviews the record to determine whether habeas corpus relief

21  is available under section 2254(d).  Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003);

22  Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000).  When it is clear that a state court has not

23  reached the merits of a petitioner's claim, or has denied the claim on procedural grounds, the

24  AEDPA's deferential standard does not apply and a federal habeas court must review the claim

25  de novo.  Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003); Pirtle v. Morgan, 313 F.3d 1160,

26  1167 (9th Cir. 2002).

1   II.  Petitioner's Claims

2       A.  Jury Instruction Error

3           Petitioner claims that the trial court violated his right to due process when it

4   instructed the jury with CALJIC Nos. 2.62 and 17.41.1.  (Petition filed March 14, 2006

5   (hereinafter Pet.) at 5, 9-11.)  After setting forth the applicable legal principles, the court will

6   address both of these jury instruction error claims in turn below.

7           1.  Legal Standards

8           A challenge to jury instructions does not generally state a federal constitutional

9   claim.  See Middleton v. Cupp, 768 F.2d at 1085 (citing Engle v. Isaac, 456 U.S. at 119);

10  Gutierrez v. Griggs, 695 F.2d 1195, 1197 (9th Cir. 1983).  Habeas corpus is unavailable for

11  alleged error in the interpretation or application of state law.  Middleton, 768 F.2d at 1085; see

12  also Lincoln v. Sunn, 807 F.2d 805, 814 (9th Cir. 1987); Givens v. Housewright, 786 F.2d 1378,

13  1381 (9th Cir. 1986).  However, a "claim of error based upon a right not specifically guaranteed

14  by the Constitution may nonetheless form a ground for federal habeas corpus relief where its

15  impact so infects the entire trial that the resulting conviction violates the defendant's right to due

16  process."  Hines v. Enomoto, 658 F.2d 667, 672 (9th Cir. 1981) (citing Quigg v. Crist, 616 F.2d

17  1107 (9th Cir. 1980)).  See also Prantil v. California, 843 F.2d 314, 317 (9th Cir. 1988) (To

18  prevail on such a claim petitioner must demonstrate that an erroneous instruction "so infected the

19  entire trial that the resulting conviction violates due process.")  The analysis for determining

20  whether a trial is "so infected with unfairness" as to rise to the level of a due process violation is

21  similar to the analysis used in determining, under Brecht, 507 U.S. at 623, whether an error had

22  "a substantial and injurious effect" on the outcome.  See Polk v. Sandoval, 503 F.3d 903, 911

23  (9th Cir. 2007) (standard applied to habeas petition presenting a jury instruction challenge);

24  McKinney v. Rees, 993 F.2d 1378, 1385 (9th Cir. 1993).

25          In order to warrant federal habeas relief, a challenged jury instruction "cannot be

26  merely 'undesirable, erroneous, or even "universally condemned,"' but must violate some due

process right guaranteed by the fourteenth amendment." <u>Prantil</u>, 843 F.2d at 317 (quoting <u>Cupp v. Naughten</u>, 414 U.S. 141, 146 (1973)).  In making its determination in this regard, the court must evaluate the challenged jury instructions "'in the context of the overall charge to the jury as a component of the entire trial process.'" <u>Prantil</u>, 843 F.2d at 817 (quoting <u>Bashor v. Risley</u>, 730 F.2d 1228, 1239 (9th Cir. 1984)).  The United States Supreme Court has cautioned that "not every ambiguity, inconsistency, or deficiency in a jury instruction rises to the level of a due process violation." <u>Middleton v. McNeil</u>, 541 U.S. 433, 437 (2004).  Further, in reviewing an allegedly ambiguous instruction, the court "must inquire 'whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way' that violates the Constitution." <u>Estelle</u>, 502 U.S. at 72 (quoting <u>Boyde v. California</u>, 494 U.S. 370, 380 (1990)).  <u>See</u> also <u>United States v. Smith</u>, 520 F.3d 1097, 1102 (9th Cir. 2008).

## 2.  CALJIC No. 2.62

Petitioner's first jury instruction claim is that the trial court violated his right to due process, in violation of <u>Carella v. California</u>, 491 U.S. 263 (1989) and <u>Sandstrom v. Montana</u>, 442 U.S. 510 (1979), when it instructed the jury with CALJIC No. 2.62.  (Pet. at 9-11.) Petitioner argues that this instruction constituted an improper mandatory presumption because it "removed the element of specific intent" and essentially directed a guilty verdict.  (Traverse at 2.) Petitioner further argues that the language of CALJIC No. 2.62 conflicted with the language of CALJIC No. 2.01 which was also read, thereby confusing the jury.[3]  (<u>Id.</u> at 4-5.)  Finally, petitioner claims that the giving of CALJIC No. 2.62 was a structural error that is not subject to harmless error review because the challenged instruction "directed a verdict for the prosecution in a criminal trial."  (<u>Id.</u> at 5.)

---

[3]  CALJIC No. 2.01 provides, in pertinent part, "if the circumstantial evidence as to any particular count permits two reasonable interpretations, one of which points to the defendant's guilt and the other to his innocence, you must adopt that interpretation that points to the defendant's innocence, and reject that interpretation that points to his guilt."  (Clerk's Transcript on Appeal (CT) at 106-07.)

1    The California Court of Appeal determined that the trial court did not err in

2  instructing the jury with CALJIC No. 2.62.  In the alternative, the court concluded that any error

3  was harmless.  The appellate court reasoned as follows:

> Defendant contends the trial court erroneously instructed the jury
> in the language of CALJIC No. 2.62 which informs the jury that it
> may draw adverse inferences from a defendant's failure to explain
> or deny evidence against him.  The trial court instructed the jury as
> follows:
>
> "In this case Defendants' [sic] Billy Vaughan and Henry Vaughan
> have testified to certain matters.
>
> "If you find that a defendant failed to explain or deny any evidence
> against him introduced by the prosecution which he can reasonably
> be expected to deny or explain because of facts within his
> knowledge, you may take that failure into consideration as tending
> to indicate the truth of this evidence and as indicating that among
> the inferences that may reasonably be drawn therefrom those
> unfavorable to the defendant are the more probable.
>
> "The failure of the defendant to deny or explain evidence against
> him does not, by itself, warrant an inference of guilt, nor does it
> relieve the prosecution of its burden of proving every essential
> element of the crime and the guilt of the defendant beyond a
> reasonable doubt.
>
> "If a defendant does not have the knowledge that he would need to
> deny or explain evidence against him, it would be unreasonable to
> draw any inference unfavorable to him because of his failure to
> deny or explain this evidence."
>
> Defendant argues that the instruction was not supported by the
> evidence in that he did not fail to explain or deny any evidence
> against him.
>
> The Attorney General claims the failure to object to the instruction
> below waives the issue on appeal.  Further, the Attorney General
> claims that both defendant and codefendant were referenced in the
> instruction and to the extent it referred to defendant, the evidence
> that defendant did not see or know of the marijuana's presence
> because he could not see out of his right eye, yet was able to drive,
> was "so unbelievable as to amount to a failure to explain adverse
> evidence."  Even assuming error, the Attorney General claims it
> was harmless since the instruction contains other portions
> favorable to the defense.
>
> We conclude there was no error and even if error, it was harmless.

/////

The trial court is required to instruct on the general principles of law relevant to the issues raised by the evidence adduced at trial and a correlative duty not to instruct on principles irrelevant to the issues and which confuse the jury or relieve the jury from making certain findings.  (People v. Saddler (1979) 24 Cal.3d 671, 681, 156 Cal.Rptr. 871, 597 P.2d 130.)  A failure to object to an instruction does not waive the issue where the "substantial rights" of the defendant are affected, that is, where a miscarriage of justice has occurred or, stated another way, where there is a reasonable probability of a different result absent the error.  (Cal. Const., art. VI, § 13; Pen.Code, § 1259; People v. Watson (1956) 46 Cal.2d 818, 836, 299 P.2d 243; People v. Hempstead (1983) 148 Cal.App.3d 949, 956, 196 Cal.Rptr. 412; People v. Arredondo (1975) 52 Cal.App.3d 973, 978, 125 Cal.Rptr. 419.)

Whether the trial court should give CALJIC No. 2.62 depends on the specific facts of the case.  (People v. Mask (1986) 188 Cal.App.3d 450, 455, 233 Cal.Rptr. 181; People v. Roehler (1985) 167 Cal.App.3d 353, 393, 213 Cal.Rptr. 353.)  "[A] contradiction is not a failure to explain or deny."  (Saddler, supra, 24 Cal.3d at p. 682, 156 Cal.Rptr. 871, 597 P.2d 130.)  Where a defendant offers a "bizarre or implausible [explanation], the inquiry whether he reasonably should have known about circumstances claimed to be outside his knowledge is a credibility question for resolution by the jury."  (Mask, supra, 188 Cal.App.3d at p. 455, 233 Cal.Rptr. 181; Roehler, supra, 167 Cal.App.3d at pp. 393-394, 213 Cal.Rptr. 353.)

On cross-examination, defendant offered a bizarre or implausible explanation as to why he never saw the marijuana brick located between Henry's feet.  After getting in Henry's car to drive, defendant never looked down at the gear shift to put the car in drive, although he had never before driven the car.  Defendant admitted while driving, he looked at Henry smoking a joint, in the rear view mirror, and both ways at traffic.  Defendant claimed he was unable to describe the marijuana cigarette.  Given defendant's bizarre story, the jury could conclude that defendant failed to explain circumstances about which he knew or should have known. CALJIC No. 2.62 was properly given.

Even assuming it was error to instruct the jury with CALJIC No. 2 .62, it was harmless (Watson, supra, 46 Cal.2d at p. 836, 299 P.2d 243).  As the court stated in People v. Ballard (1991) 1 Cal.App.4th 752, 2 Cal.Rptr.2d 316, "CALJIC No. 2.62 does not direct the jury to draw an adverse inference.  It applies only if the jury finds that the defendant failed to explain or deny evidence.  It contains other portions favorable to the defense (suggesting when it would be unreasonable to draw the inference; and cautioning that the failure to deny or explain evidence does not create a presumption of guilt, or by itself warrant an inference of guilt, nor relieve the prosecution of the burden of proving every essential

1    element of the crime beyond a reasonable doubt)." (<u>Id.</u> at p. 756, 2
2    Cal.Rptr.2d 316.)

3    (Opinion at 4-7.)

4              After a review of the record, this court concludes that the giving of CALJIC No.

5    2.62 did not violate petitioner's right to due process.  As explained by the state appellate court,

6    the instruction was not improper given petitioner's failure to explain how he could not see the

7    large brick and other marijuana in the car but yet was able to see well enough to drive.  This

8    court rejects petitioner's argument that CALJIC No. 2.62 created an improper mandatory

9    presumption.[4]  The jury was not instructed that it must infer any specific fact if other predicate

10   facts were proved as would be the case with a mandatory presumption.  On the contrary, CALJIC

11   No. 2.62 specifically informed the jury that petitioner's failure to deny or explain evidence

12   against him did not, by itself, warrant an inference of guilt or relieve the prosecution of its burden

13   of proving every essential element of the crime beyond a reasonable doubt.  The instruction also

14   informed the jury that it would be unreasonable to draw any inference unfavorable to petitioner if

15   he did not have the knowledge needed to deny or explain the evidence against him.  This

16   language precludes a finding that CALJIC No. 2.62 created a presumption of any kind.

17            The court also rejects petitioner's arguments that the giving of both CALJIC Nos.

18   2.62 and 2.01 confused the jury.  Reading the two instructions together, the jurors were instructed

19   to consider a failure to explain or deny evidence as bearing on the truth of petitioner's testimony.

20

21            [4] Due process is violated by jury instructions which use mandatory presumptions to
22   relieve the prosecution's burden of proof on any element of the crime charged.  <u>Francis v.</u>
     <u>Franklin</u>, 471 U.S. 307, 314 (1985); <u>see also</u> <u>Sandstrom</u>, 442 U.S. at 515-24.  In general, "[a]
23   mandatory presumption instructs the jury that it must infer the presumed fact if . . . certain
     predicate facts" are proved.  <u>Francis</u>, 471 U.S. at 314.  The due process clause is implicated
24   where the presumed fact is an element of the prosecution's case, because in that situation proof
     of predicate facts will either remove the presumed element from the State's case altogether or
25   will shift the burden of persuasion on the presumed element to the defendant.  <u>Id.</u> at 317.  In
     either case, such a presumption operates to relieve the State from its constitutional obligation to
26   prove beyond a reasonable doubt every essential element of the crime charged.  <u>Id.</u> at 313; <u>In re</u>
     <u>Winship</u>, 397 U.S. 358, 364 (1970).

1  They were told, however, that if after consideration the circumstantial evidence pointed equally

2  to guilt and innocence, they were required to adopt the interpretation that pointed to innocence.

3  In other words, the jury was instructed that a failure to explain evidence was only one factor to

4  consider when weighing the import of circumstantial evidence.  Contrary to petitioner's

5  argument, the language of the two challenged instructions when considered in the context of this

6  case was not confusing or inconsistent.

7          This court also agrees with the state appellate court that any error in the giving of

8  CALJIC No. 2.62 was harmless.  The language of the instruction, read in its entirety, properly

9  limited the scope of any inference the jury was allowed to draw from a failure to explain or deny

10  evidence.  Under the circumstances of this case, petitioner cannot demonstrate that the giving of

11  CALJIC No. 2.62 had a substantial and injurious effect on the verdict.  See Inthavong v.

12  LaMarque, 420 F.3d 1055, 1059 (9th Cir. 2005) (in order to grant habeas relief where a state

13  court has determined that a constitutional error was harmless, a reviewing court must determine,

14  among other things, that constitutional error had a substantial and injurious effect or influence in

15  determining the jury's verdict pursuant to Brecht v. Abrahamson, 507 U.S. 619, 623 (1993)).

16          The decision of the California Court of Appeal rejecting petitioner's jury

17  instruction error claim is not based on an unreasonable determination of the facts of this case, nor

18  is it based on an unreasonable application of federal law.  Accordingly, petitioner is not entitled

19  to relief on this claim.

20          3.  CALJIC No. 17.41.1

21          Petitioner claims that the trial court violated his right to due process when it

22  instructed the jury with CALJIC No. 17.41.1.  (Pet. at 5.)  The California Court of Appeal also

23  rejected this claim, reasoning as follows:

24          Defendant contends the trial court erroneously instructed the jury
           in the language of CALJIC No. 17.41.1 as follows:

25
           "The integrity of the trial requires that jurors, at all times during
26          their deliberations, conduct themselves as required by these

10

1    instructions.  Accordingly, should it occur that any juror refuses to
     deliberate or expresses an intention to disregard the law or to
2    decide the case based on penalty or punishment, or any other
     improper basis, it is the obligation of the other jurors to
3    immediately advise the Court of the situation."

4     People v. Engelman (2002) 28 Cal.4th 436, 121 Cal.Rptr.2d 862,
     49 P.3d 209 concluded that giving the foregoing instruction did not
5    constitute error or infringe upon defendant's constitutional rights.
     Accordingly, we reject defendant's claim.

6

7    (Opinion at 7-8.)[5]

8           Petitioner's claim in this regard is foreclosed by the decision of the Ninth Circuit

9    in Brewer v. Hall, 378 F.3d 952, 955-57 (9th Cir. 2004), in which the court rejected this same

10   claim.  See Osumi v. Giurbino, 445 F. Supp.2d 1152, 1165 (C.D. Cal. 2006) (concluding that the

11   holding in Brewer controls and forecloses a federal habeas claim challenging CALJIC 17.41.1).

12   Accordingly, the state court's rejection of petitioner's claim was not contrary to or an

13   unreasonable application of clearly established federal law.  28 U.S.C. § 2254(d).

14          Even if CALJIC No. 17.41.1 was erroneously given, any error in this case was

15   harmless.  See Brecht, 507 U.S. at 623 (federal habeas relief may not be granted for trial errors

16   without a showing of actual prejudice).  The jurors at petitioner's trial did not ask any questions

17   during their deliberations or communicate with the court in any way before returning their guilty

18   verdict against petitioner.  There is simply no indication that the giving of CALJIC No. 17.41.1

19   prevented free and full deliberations.  Accordingly, petitioner is not entitled to relief on this claim

20   of jury instruction error.

21   /////

22   /////

23   _____

24          [5]  The California Supreme Court held that CALJIC 17.41.1 did not infringe upon a
     defendant's federal or state constitutional right to trial by jury or his state constitutional right to a
25   unanimous jury verdict.  People v. Engelman, 28 Cal. 4th 436, 439-40 (2002).  However,
     exercising its supervisory authority over the lower state courts, the California Supreme Court
26   directed that CALJIC No. 17.41.1 no longer be given in future trials because of its "potential" to
     intrude on jury deliberations.  Engelman, 28 Cal. 4th at 449.

B.  Ineffective Assistance of Counsel

Petitioner claims that his trial and appellate counsel rendered ineffective assistance.  After setting forth the applicable legal principles, the court will address these claims in turn below.

1.  Legal Standards

The Sixth Amendment guarantees the effective assistance of counsel.  The United States Supreme Court set forth the test for demonstrating ineffective assistance of counsel in Strickland v. Washington, 466 U.S. 668 (1984).  To support a claim of ineffective assistance of counsel, a petitioner must first show that, considering all the circumstances, counsel's performance fell below an objective standard of reasonableness.  466 U.S. at 687-88.  After a petitioner identifies the acts or omissions that are alleged not to have been the result of reasonable professional judgment, the court must determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance.  Id. at 690; Wiggins v. Smith, 539 U.S. 510, 521 (2003).  Second, a petitioner must establish that he was prejudiced by counsel's deficient performance.  Strickland, 466 U.S. at 693-94.  Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694.  A reasonable probability is "a probability sufficient to undermine confidence in the outcome."  Id.  See also Williams, 529 U.S. at 391-92; Laboa v. Calderon, 224 F.3d 972, 981 (9th Cir. 2000).  A reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . .  If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed."  Pizzuto v. Arave, 280 F.3d 949, 955 (9th Cir. 2002) (quoting Strickland, 466 U.S. at 697).

Defense counsel has a "duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary."  Strickland, 466 U.S. at

12

1  691. "This includes a duty to . . . investigate and introduce into evidence records that

2  demonstrate factual innocence, or that raise sufficient doubt on that question to undermine

3  confidence in the verdict." Bragg v. Galaza, 242 F.3d 1082, 1088 (9th Cir. 2001) (citing Hart v.

4  Gomez, 174 F.3d 1067, 1070 (9th Cir. 1999)).   In this regard, it has been recognized that "the

5  adversarial process will not function normally unless the defense team has done a proper

6  investigation." Siripongs v. Calderon (Siripongs II), 133 F.3d 732, 734 (9th Cir. 1998) (citing

7  Kimmelman v. Morrison, 477 U.S. 365, 384 (1986)).   Therefore, counsel must, "at a minimum,

8  conduct a reasonable investigation enabling him to make informed decisions about how best to

9  represent his client." Hendricks v. Calderon, 70 F.3d 1032, 1035 (9th Cir. 1995) (quoting

10  Sanders v. Ratelle, 21 F.3d 1446, 1456 (9th Cir. 1994) (internal citation and quotations omitted).

11  On the other hand, where an attorney has consciously decided not to conduct further investigation

12  because of reasonable tactical evaluations, his or her performance is not constitutionally

13  deficient. See Siripongs II, 133 F.3d at 734; Babbitt v. Calderon, 151 F.3d 1170, 1173 (9th Cir.

14  1998); Hensley v. Crist, 67 F.3d 181, 185 (9th Cir. 1995).  "A decision not to investigate thus

15  'must be directly assessed for reasonableness in all the circumstances.'" Wiggins, 539 U.S. at

16  533 (quoting Strickland, 466 U.S. at 691).  See also Kimmelman, 477 U.S. at 385 (counsel

17  "neither investigated, nor made a reasonable decision not to investigate"); Babbitt, 151 F.3d at

18  1173-74.  A reviewing court must "examine the reasonableness of counsel's conduct 'as of the

19  time of counsel's conduct.'" United States v. Chambers, 918 F.2d 1455, 1461 (9th Cir. 1990)

20  (quoting Strickland, 466 U.S. at 690).  Furthermore, "'ineffective assistance claims based on a

21  duty to investigate must be considered in light of the strength of the government's case.'" Bragg,

22  242 F.3d at 1088 (quoting Eggleston v. United States, 798 F.2d 374, 376 (9th Cir. 1986)).

23          In assessing an ineffective assistance of counsel claim "[t]here is a strong

24  presumption that counsel's performance falls within the 'wide range of professional assistance.'"

25  Kimmelman, 477 U.S. at 381 (quoting Strickland, 466 U.S. at 689).  There is in addition a strong

26  /////

1    presumption that counsel "exercised acceptable professional judgment in all significant decisions

2    made." Hughes v. Borg, 898 F.2d 695, 702 (9th Cir. 1990) (citing Strickland, 466 U.S. at 689).

3         The Strickland standards apply to appellate counsel as well as trial counsel. Smith

4    v. Murray, 477 U.S. 527, 535-36 (1986); Miller v. Keeney, 882 F.2d 1428, 1433 (9th Cir. 1989).

5    However, an indigent defendant "does not have a constitutional right to compel appointed

6    counsel to press nonfrivolous points requested by the client, if counsel, as a matter of

7    professional judgment, decides not to present those points." Jones v. Barnes, 463 U.S. 745, 751

8    (1983). Counsel "must be allowed to decide what issues are to be pressed." Id. Otherwise, the

9    ability of counsel to present the client's case in accord with counsel's professional evaluation

10   would be "seriously undermined." Id. See also Smith v. Stewart, 140 F.3d 1263, 1274 n.4 (9th

11   Cir. 1998) (counsel not required to file "kitchen-sink briefs" because it "is not necessary, and is

12   not even particularly good appellate advocacy.") There is, of course, no obligation to raise

13   meritless arguments on a client's behalf. See Strickland, 466 U.S. at 687-88 (requiring a

14   showing of deficient performance as well as prejudice). Thus, counsel is not deficient for failing

15   to raise a weak issue. See Miller, 882 F.2d at 1434. In order to demonstrate prejudice in this

16   context, petitioner must show that, but for appellate counsel's errors, he probably would have

17   prevailed on appeal. Id. at 1434 n.9.

18        2. Trial Counsel

19        Petitioner claims that his trial counsel rendered ineffective assistance by failing to

20   investigate whether petitioner was competent to stand trial. (Pet. at 11-12.) Petitioner explains

21   that he was on medication at the time of trial because of a recent surgery. (Id. at 11.) He states

22   that his trial counsel knew he was going to have surgery, and argues that his attorney should have

23   "investigated the mental and physical affects" of the post-surgery medications he was required to

24   take. (Id.) Petitioner claims that his counsel was too busy to meet with him to discuss the effects

25   the medication was having on him. (Id.) Petitioner also complains that his trial counsel

26   improperly failed to object to a sidebar agreement "not to introduce pancreas medications for fear

14

it would open up the door to medical marijuana even though [petitioner] assured he would not use that as a defense." (Id. at 12.) Petitioner argues that he "should have been examined by a psychiatrist." (Id.) He complains that his trial counsel decided not to call several witnesses who had originally been on the defense witness list, including at least one physician who could have testified about petitioner's medical problems before and during the crimes for which he was convicted. (Traverse at 6-8; Reporter's Transcript on Appeal (RT) at 46-47.) He also faults his trial counsel for failing to introduce documentary evidence regarding his medical problems. (Traverse at 6-7, 22-46.) He explains, "the medications I was taking over a period of 7 months had me losing my memory from time to time and sometimes very spaced out unable to comprehend and understand or keep up with what was taking place." (Id. at 8.)

Attached as exhibits to petitioner's traverse are several letters. (Id. at 18-22.) Two of these letters are written by a pastor and friend of petitioner's, who describes petitioner's behavior before and at the time of his arrest, states that petitioner had "many doctor and clinic appointments," and notes that petitioner had "pancreatitis and gallstones which cause him severe pain." (Id. at 18, 20.) A third letter, written by a physician and dated before petitioner's trial, is addressed to a person who petitioner describes as his "lawyer in Monterey County." (Id. at 6, 22.) In this letter the physician explains that petitioner has "a diagnosis of acute and chronic pancreatitis and colecycsitis" and that he was taking several medications, "which include pancreatic enzymes, Zantac, and analgesic as needed." (Id. at 22.) In connection with his claim of ineffective assistance of appellate counsel, petitioner states that "had [he] been in the right frame of mind, he would have told the Courts that the Marijuana was not his and it must have belonged to the owner of the car." (Pet. at 14.)

Petitioner raised his arguments regarding the alleged ineffective assistance of his trial counsel in a petition for a writ of habeas corpus filed in the Sacramento County Superior Court. (Resp't's Lodged Doc. No. 8.) The Superior Court rejected the claim, reasoning as follows:

1        The only claim in this petition that arguably could not have been
2   raised on appeal is the claim of ineffective assistance of counsel.
    Petitioner cites several particular failures of trial counsel as being
3   prejudicial to his case.  However, the petition contains no evidence
    to support Petitioner's contentions.  The only documents
4   supporting the petition are copies of the motion for new trial and
    accompanying affidavit of trial counsel.  The affidavit sets forth
5   only facts to support the granting of the new trial, i.e., that
    Petitioner was on medication during the trial, that the trial court
6   prevented counsel from asking Petitioner to testify about his
    medical condition, and that the jurors may have misapplied the
7   law.  Nothing in the affidavit supports Petitioner's claim that trial
    counsel's conduct was deficient.  Petitioner has therefore failed to
8   show that he received ineffective assistance of counsel, which
    claim is hereby denied.

9   (Id. at consecutive p. 2.)[6]  By order dated January 22, 2004, the California Court of Appeal

10  denied relief with respect to petitioner's ineffective assistance of counsel claim, citing In re

11  Clark, 5 Cal.4th 750, 764-65 (1993).  (Resp't's Lodged Doc. No. 11.)  The California Supreme

12  Court summarily denied the habeas petition containing this claim by order dated October 13,

13  2004.  (Resp't's Lodged Doc. No. 12.)

14       The conviction of a legally incompetent defendant violates the Due Process

15  Clause of the Fourteenth Amendment.  Cooper v. Oklahoma, 517 U.S. 348, 354 (1996);

16  Cacoperdo v. Demosthenes, 37 F.3d 504, 510 (9th Cir. 1994).  In federal court, a defendant is

17  incompetent to stand trial if he lacks sufficient present ability to consult with his lawyer with a

18  reasonable degree of rational understanding or lacks a rational as well as factual understanding of

19  the proceedings against him.  Dusky v. United States, 362 U.S. 402 (1960).  See also Godinez v.

20  Moran, 509 U.S. 389, 396 (1993); McMurtrey v. Ryan, 539 F.3d 1112, 1118 (9th Cir. 2008);

21  Douglas v. Woodford, 316 F.3d 1079, 1094 (9th Cir. 2003).  In California, "[a] defendant is

22  mentally incompetent ... [if] the defendant is unable to understand the nature of the criminal

23  /////

24

25      [6]  Petitioner raised his claim of ineffective assistance of counsel again in two subsequent
    petitions for writ of habeas corpus filed in the Sacramento County Superior Court.  (Resp't's
26  Lodged Docs. Nos. 9, 10.)  In both instances, the Superior Court rejected the claim as successive
    or duplicative.  (Id.)

1   proceedings or to assist counsel in the conduct of a defense in a rational manner."  California

2   Penal Code § 1367.

3            In a habeas proceeding, "a petitioner is entitled to an evidentiary hearing on the

4   issue of competency to stand trial if he presents sufficient facts to create a real and substantial

5   doubt as to his competency, even if those facts were not presented to the trial court." Deere v.

6   Woodford, 339 F.3d 1084, 1086 (9th Cir. 2003) (quoting  Boag v. Raines, 769 F.2d 1341, 1343

7   (9th Cir. 1985)).  See also Douglas, 316 F.3d at 1094.  A "good faith" or "substantial doubt"

8   exists in this regard  "when there is substantial evidence of incompetence." Deere, 339 F.3d at

9   1086 (quoting Cuffle v. Goldsmith, 906 F.2d 385, 392 (9th Cir. 1990)).  The burden of

10  establishing mental incompetence rests with the petitioner.  Boag, 769 F.2d at 1343; McKinney

11  v. United States, 487 F.2d 948, 949 (9th Cir. 1973) ("[W]hen the issue of the defendant's

12  competency to stand trial is raised in a § 2255 motion, the burden is upon the defendant to prove

13  that he was not mentally competent to stand trial."); see also Cacoperdo, 37 F.3d at 510 (habeas

14  petitioner bears burden of showing due process violation).

15           Whether a defendant is capable of understanding the proceedings and assisting

16  counsel depends on "evidence of the defendant's irrational behavior, his demeanor in court, and

17  any prior medical opinions on competence to stand trial." Drope v. Missouri, 420 U.S. 162, 180

18  (1975).  None of these factors is determinative, but any one of them may be sufficient to raise a

19  reasonable doubt regarding competence.  Id.  Finally, the Due Process Clause requires a state trial

20  court to inquire into a defendant's competency sua sponte if a reasonable judge would be

21  expected to have a bona fide doubt as to the defendant's competence.  Pate v. Robinson, 383 U.S.

22  375, 385 (1966); Blazak v. Ricketts, 1 F.3d 891, 893 & n.1 (9th Cir. 1993).

23           The record reflects that petitioner filed a motion for new trial, in which he argued

24  that he was not always "alert, mentally" during trial because he was taking Vidocin for pain, and

25  that he was "mentally absent" during parts of the trial for the same reason. (CT at 139-40.)

26  Petitioner also argued in his motion that the trial court had made an erroneous sidebar ruling to

17

the effect that "no questions could be asked of Billy Vaughan regarding his medical conditions, and the medications he was taking for them, aside from the cataract that he had at the time, and the subsequent medical treatment – including cataract surgery – for that condition." (Id. at 140.) Because of this ruling, petitioner's jury did not hear evidence about his activities or medical condition during the time prior to his arrest, with the exception of his cataract surgery. (Id. at 140-41.)  Petitioner requested that the court appoint two psychiatrists to examine him and his medical records in order to provide the court their medical opinions regarding petitioner's mental status during the course of the trial "given the amounts and types of medications he was taking at that time." (Id. at 140.)  In his declaration in support of the motion for new trial, petitioner's trial counsel explained that, although he was aware that petitioner was taking medications which were making him drowsy and nauseous, it was not until after petitioner testified that counsel began to believe petitioner might have been "mentally absent from all or part of the trial proceedings" because of the medications.  (Id. at 145-46.)  Counsel also explained that at trial he attempted to introduce evidence of petitioner's medical condition and the medications he was taking for the purpose of showing petitioner's "mental state and ability to focus at the time of the arrest." (Id. at 147.)  When the court ruled that this evidence was inadmissible, counsel "refrained from asking [petitioner] about his pancreatitis, colitis, and Hepatitis conditions, and the medications he was taking for those" and "the various and numerous medical appointments he had been attending during the two months he had lived in Sacramento up to the time of his arrest." (Id.) Counsel also stated that he had refrained from "calling as a witness Ms. Diana Atkins, [petitioner's] girlfriend, who could have verified the number of times she had to take [petitioner] to doctor's appointments during the two month period that he had lived at her house." (Id.)

         The trial court denied petitioner's motion for new trial.  (RT at 574.)  During the trial court's explanation of its ruling, the following colloquy between the court and petitioner's trial counsel took place:

/////

On the motion for a new trial, the grounds appear to be several. There is an allegation that the defendant was mentally absent during the trial, an allegation that he was somehow incoherent, not able to understand what's going on.  The Court rejects that, having sat through and listened to Mr. Billy Vaughan's testimony.  It's apparent to me that he was coherent and that he did understand what was going on.  There was no hesitancy on his part in answering questions.  Nothing that would indicate to the Court that somehow he was doped up on medications to the point where he didn't understand what was going on.

* * *

The second point that was made or attempted to be made in the defense motion for new trial is that the Court erred in keeping out Mr. Billy Vaughan's mental condition.  The Court is satisfied when counsel approached and there was an objection going over into Billy Vaughan's mental condition that there was no mention at side bar about the defendant being mentally incapable of testifying.

Mr. Bauer's declaration has some language in it now saying that he urged the Court that they should allow or the jury should be allowed to hear about the defendant's mental condition for purposes of evaluating his testimony.

Well, if the purpose was to say, don't believe him and that he was mentally incapable of testifying, the Court certainly would have expected defense counsel to tell the Court that.  And the Court has no recollection; in fact, very specific recollection that there was no such representation made to the Court.

MR. BAUER (petitioner's counsel):  Can I briefly address that, your Honor?

THE COURT:  Let me say one more thing.

The Court is also satisfied completely that if the defense had said, well, Mr. Vaughan is not on the right medications, he's incapable of testifying at this point, the remedy would have been a recess, not going and informing the jury that somehow he's on 50 different medications for 50 different illnesses and therefore, he's, quote, unquote, spaced-out and not worthy to be believed on certain things or that you somehow have to discount portions of his testimony or not believe when Mr. Billy Vaughan comes up here under oath, says the things that he did say about his interactions with marijuana.

Mr. Bauer, you wanted to say something else?

MR. BAUER:  Yes, your Honor.  As far as the – I want to make it clear that I did not intend at any point in my declaration to imply

that we were requesting evidence regarding Billy's medical condition at the time he was going to take the stand because of his condition at that time.  If I had the – the evidence that I got regarding what I believed was his medical condition during the trial came to me after he began to testify.

Up until that point, although I noticed that he seemed to be drowsy, we discussed his medication during the course of trial up to that point, I never had any indication that there was anything – that he wasn't anything other than mentally with us to whatever degree he's capable of.

So when we approached the bench about his medical condition, the only concern I had was for his mental state at the time of his arrest.  Where, you know, at night a guy with vision in only one eye in a car with another guy who's smoking marijuana, may have some kind of a contact high going himself, plus the fact that he's on medication, that's the only thing I was interested in presenting at that time.

And you're correct.  There was no mention to you at that point in time when we approached the bench about anything, any concern that I had regarding Billy's present mental condition because it was my belief at that point that his present mental condition was okay.  It was only subsequent to that point after he testified, after his brother started testifying that I started getting questions from him regarding what had happened the day before.  When is he going to get to testify?  What's going on here?  That stuff.

And initially, like I said, frankly, I thought he was joking with me, initially.  When it continued over the course of the next couple days, I began to realize that maybe there is really something wrong here.  By then it was too late.  He had already testified.  It wasn't my intention, and it was never my intention in this case by Billy to ever put on any evidence of a medical marijuana defense or any evidence regarding his present medical condition as he was sitting here in court testifying in court.

(Id. at 569-72.)

The above-quoted colloquy, and the declaration of petitioner's trial counsel in support of the motion for new trial, reflect that petitioner's counsel did not have any suspicions about petitioner's mental competence until after petitioner had testified at his trial.  At that point, trial counsel filed a motion for new trial asking for a psychiatric evaluation to determine whether petitioner had been "mentally absent" from the trial due to the medications he was taking.  There is no evidence before this court that counsel's actions were unreasonable or that he should have

20

1   had a doubt as to petitioner's competency any earlier.  The court also notes that, as evidenced by

2   his remarks, the trial judge did not observe anything about petitioner's demeanor or his testimony

3   which raised a doubt as to petitioner's competence.  There is no substantial evidence that

4   petitioner lacked a rational and factual understanding of the proceedings or that he was incapable

5   of consulting with his attorney.  Petitioner did not exhibit any irrational behavior, nor was the

6   court confronted with any evidence that raised a question as to petitioner's competence to stand

7   trial.  Cf. Blazak, 1 F.3d at 897 (competency hearing should have been conducted where state

8   trial court had records before it explaining defendant's extensive history of mental illness and

9   previous adjudications of incompetency, and there was no finding of competency at the time of

10  defendant's trial); Chavez v. United States, 656 F.2d 512, 515 (9th Cir. 1981) (evidentiary

11  hearing required where petitioner had a history of antisocial behavior and treatment for mental

12  illness, petitioner had several emotional outbursts in court, there was a previous psychiatric

13  finding of insanity based upon psychoneurosis and the use of drugs, and an inference drawn from

14  the fact that petitioner pled guilty without even attempting to plea bargain).

15          In addition, there is no evidence that the medications petitioner was taking

16  rendered him incompetent.  See United States v. Pellerito, 878 F.2d 1535, 1542 (1st Cir. 1989)

17  ("There must be some evidence that the medication affected his rationality").  Petitioner's trial

18  counsel specifically told the court at the hearing on the motion for new trial that he did not notice

19  any lack of comprehension until after petitioner had testified and, even then, he wasn't sure

20  whether there was a problem or not.  See Medina v. California, 505 U.S. 437, 450 (1992)

21  ("defense counsel will often have the best-informed view of the defendant's ability to participate

22  in his defense"); United States v. Lewis, 991 F.2d 524, 528 (9th Cir. 1993) (a defense counsel's

23  silence on the petitioner's competency is some evidence that the petitioner showed no signs of

24  incompetence at that time); Hernandez v. Ylst, 930 F.2d 714, 718 (9th Cir. 1991) ("[w]e deem

25  significant the fact that the trial judge, government counsel, and Hernandez's own attorney did

26  not perceive a reasonable cause to believe Hernandez was incompetent"); United States v. Clark,

21

617 F.2d 180, 186 (9th Cir. 1980) (fact that defendant's attorney considered defendant competent to stand trial was significant evidence that defendant was competent).  Under these circumstances, trial counsel's failure to investigate whether petitioner was competent to stand trial was not outside the wide range of professionally competent assistance.

Petitioner has also failed to establish prejudice with respect to this claim.  There is no evidence that further investigation by counsel would have uncovered evidence that petitioner was not competent to stand trial.  Accordingly, petitioner cannot demonstrate that his counsel's failure, if any, to investigate his mental state was detrimental to the defense.  See Jackson v. Calderon, 211 F.3d 1148, 1159-60 (9th Cir. 2000); Villafuerte v. Stewart, 111 F.3d 616, 632 (9th Cir. 1997) (petitioner's ineffective assistance claim rejected where he presented no evidence concerning what counsel would have found had he investigated further, or what lengthier preparation would have accomplished); Langford v. Day, 110 F.3d 1380, 1387-88 (9th Cir. 1996) (where the record furnished no reason to believe that further psychiatric evaluation would have created an issue regarding petitioner's competence, counsel's decision not to further explore the question fell within the wide range of reasonable professional assistance); United States v. Harden, 846 F.2d 1229, 1231-32 (9th Cir. 1988) (no ineffective assistance because of counsel's failure to call a witness where, among other things, there was no evidence in the record that the witness would testify); United States v. Berry, 814 F.2d 1406, 1409 (9th Cir. 1987) (appellant failed to meet prejudice prong of ineffectiveness claim because he offered no indication of what potential witnesses would have testified to or how their testimony might have changed the outcome of the hearing).  Cf. Lord v. Wood, 184 F.3d 1083, 1085 (9th Cir. 1999) (petitioner's ineffective assistance claim granted where counsel failed to personally interview witnesses whose testimony, if believed, would have cleared petitioner of murder).  In short, there is no reasonable probability that, "but for counsel's unprofessional errors, the result of the proceeding would have been different."  Strickland, 466 U.S. at 694.

/////

1          Although it is not clear from the allegations of the petition before the court,

2  petitioner may also be claiming that his trial counsel rendered ineffective assistance by failing to

3  investigate whether petitioner's mental state prior to trial rendered him incapable of committing

4  the crime or being aware that there were drugs and drug paraphernalia in the car he was driving.

5  If petitioner is making such a claim, it should also be rejected.  There is no evidence before the

6  court that counsel rendered deficient performance in failing to make such an investigation or that

7  further investigation by counsel would have resulted in a different outcome at trial.  The letters

8  submitted by petitioner in support of his claim of ineffective assistance of counsel, which are

9  relevant to petitioner's mental and physical condition at the time of the crime, do not change this

10  result.  As discussed above, petitioner's trial counsel apparently attempted to introduce evidence

11  of petitioner's mental state and the medications he was taking at the time of his arrest but the trial

12  judge prevented its introduction. (CT at 147.)  Petitioner fails to explain what more his trial

13  counsel should have done.  The conclusion of the Sacramento County Superior Court that

14  petitioner was not deprived of the effective assistance of counsel is not contrary to or an

15  unreasonable application of <u>Strickland</u>.  Accordingly, petitioner is not entitled to relief on this

16  claim.

17                3.  <u>Appellate Counsel</u>

18          Petitioner claims that his appellate counsel rendered ineffective assistance by

19  failing to raise meritorious issues on appeal.  Specifically, he faults his appellate counsel for

20  failing to argue that trial counsel rendered ineffective assistance in failing to investigate

21  petitioner's competence to stand trial; in failing to present evidence regarding petitioner's busy

22  schedule around the time of his arrest; and in failing to object to errors at petitioner's sentencing

23  hearing.  (Pet. at 13-14.)  Petitioner also states that "a letter was written to appellate counsel

24  /////

25  /////

26  /////

1    asking that certain issues be entered and none was entered" and that "appellate counsel picked

2    issues himself without approval."  (Id. at 5, 13.)[7]

3                As reflected in a letter attached as an exhibit to petitioner's traverse, his appellate

4    counsel informed petitioner that he did not raise "the competency issue" in petitioner's appeal

5    because he "thought it to be wholly without merit."  (Traverse at 47.)  Appellate counsel's

6    decision to press only issues on appeal that he believed, in his professional judgment, had more

7    merit than the ineffective assistance of counsel claims suggested by petitioner was "within the

8    range of competence demanded of attorneys in criminal cases."  McMann v. Richardson, 397

9    U.S. 759, 771 (1970).  There is no evidence in the record that appellate counsel's investigation

10   into possible meritorious issues to raise on appeal was incomplete, that a more thorough

11   investigation would have revealed other meritorious issues on appeal, or that appellate counsel's

12   decision not to raise a claim of ineffective assistance of trial counsel fell below an objective

13   standard of reasonableness.  There is also no evidence suggesting that claims regarding errors in

14   the sentencing proceedings or trial counsel's failure to explain petitioner's activities prior to his

15   arrest would have been meritorious.  As noted above, appellate counsel has no obligation to raise

16   meritless issues on appeal.  Strickland, 466 U.S. at 687-88.  The state court determination with

17   regard to petitioner's claim of ineffective assistance of appellate counsel is not contrary to, or an

18   unreasonable application of Strickland.  Accordingly, petitioner is not entitled to habeas relief on

19   that claim.

20   /////

21   _____

22        [7] As with the ineffective assistance of trial counsel claim discussed above, petitioner
     raised this claim in his petition for a writ of habeas corpus filed in the Sacramento County
23   Superior Court.  (Resp't's Lodged Doc. No. 8.)  The Superior Court rejected petitioner's claims
     of ineffective assistance of counsel on the merits, without explaining its reasoning.  (Id.)  By
24   order dated January 22, 2004, the California Court of Appeal denied relief on the petition before
     it, citing In re Clark, 5 Cal. 4th 750, 764-65 (1993).  (Resp't's Lodged Doc. No. 11.)  The
25   California Supreme Court summarily denied petitioner's habeas petition in an order dated
     October 13, 2004.  (Resp't's Lodged Doc. No. 12.)  Under these circumstances, the court will
26   independently review the record to determine whether habeas corpus relief is available under
     section 2254(d).  Himes, 336 F.3d at 853.

                                              24

C.  Due Process

In his final claim, petitioner alleges that his right to due process was violated at his sentencing hearing.  Although it is not clear, petitioner appears to be claiming that his trial counsel rendered ineffective assistance at that hearing.  (Pet. at 6, 15.)  In support of his due process claim, petitioner refers to several portions of the trial transcript.  In one exchange cited by petitioner, counsel informed the trial court that he had decided not to call several witnesses who had been on the witness list, including two physicians.  (RT at 46.)  Later, at the hearing on the motion for new trial, counsel explained that he began to be concerned about petitioner's mental condition after he had testified in his own defense at trial.  (Id. at 571.)

If petitioner is claiming that his trial counsel rendered ineffective assistance at the sentencing hearing, his claim should be rejected.  The Ninth Circuit Court of Appeals has concluded that "there is no clearly established federal law" regarding the standard for ineffective assistance of counsel at  sentencing in noncapital cases.  Cooper-Smith v. Palmateer, 397 F.3d 1236, 1244 (9th Cir. 2005).  When the Supreme Court established the test for ineffective assistance of counsel claims in Strickland, the Court expressly declined to "consider the role of counsel in an ordinary sentencing, which ... may require a different approach to the definition of constitutionally effective assistance." Id.  In the years since Strickland was decided, the Supreme Court has not announced what standard should apply to ineffective assistance of counsel claims in the context of sentencing proceedings in noncapital cases.  Id.  Consequently, because there is no clearly established federal law  "squarely addresses" this issue, the state court did not unreasonably apply federal law in concluding that petitioner was not entitled to relief with respect to this claim.  See Moses v. Payne, 543 F.3d 1090, 1098 (9th Cir. 2008).  Moreover, after reviewing the record of the sentencing proceedings in petitioner's case, this court does not find

/////

/////

/////

25

any evidence of ineffective assistance of counsel or any other federal constitutional error. Therefore, petitioner is not entitled to relief with respect to his due process claim.[8]

CONCLUSION

Accordingly, for the foregoing reasons, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within ten days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: December 12, 2008.

_Dale A. Drozd_
_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:8
vaughan2549.hc

---

[8]  Petitioner's due process claim may be related to his claim that his trial counsel rendered ineffective assistance by failing to thoroughly investigate whether petitioner was competent to stand trial and/or whether petitioner was capable of observing the marijuana in the car in which he was arrested.  For the reasons explained above, petitioner's claim of ineffective assistance of trial counsel on these grounds lacks merit and relief should be denied.